IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TIFFANY NEAL,

*Plaintiff*,

v.

UNITED STATES OF AMERICA,

*Defendant*.

Civil Action No. ELH-19-1033

**MEMORANDUM OPINION**

Plaintiff Tiffany Neal, a disabled U.S. Army veteran, filed a tort suit against the United States of America (the "Government"), pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* ECF 1 (the "Complaint"). She alleges "Professional Negligence – Vicarious Liability" (Count 1) and "Intrusion Upon Seclusion – Privacy Violation" (Count 2), arising out of events that occurred in 2017, while Neal was a patient at the Veterans Affairs Medical Center (the "VA") in Baltimore. In particular, plaintiff claims that a male employee of the VA ignored a knock-before-entering sign, entered the examination room while she was partially disrobed and undergoing an electrocardiogram, and "press[ed] his private parts inappropriately over [her] head on the examination bed." ECF 1, ¶¶ 12, 14, 15.

The Government has moved to dismiss the entire Complaint pursuant to Fed. R. Civ. P. 12(b)(1), asserting sovereign immunity. And, under Rule 12(b)(6), it has moved to dismiss Count 2, the privacy claim, for failure to state a claim. ECF 9 (the "Motion"). It has also submitted several exhibits. ECF 9-1 to ECF 9-3. Plaintiff opposes the Motion. ECF 10 (the "Opposition"). The Government has replied (ECF 13, the "Reply") and has submitted two additional exhibits. ECF 13-1; ECF 13-2.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion in part and deny it in part.

## I. Background[1]

Plaintiff, a disabled Army veteran, "received medical and therapeutic treatment and services at the US Department of Veterans Affairs Maryland Healthcare System, Baltimore VA Medical Center." ECF 1, ¶¶ 6, 8. On August 7, 2017, plaintiff "visited the Cardiology clinic for a routine ultrasound and electrocardiogram proceeding." *Id.* ¶ 10. The procedure was conducted by a female technician. For the procedure, Neal removed "her shirt and bra" and was given a robe. *Id.* Due to the nature of the procedure, "Neal's breasts and upper torso were exposed while the female technician performed the procedure." *Id.* ¶ 11. The technician "placed a sign on the door that required any one attempting to enter to knock first before proceeding to enter." *Id.* ¶ 12.

During the medical procedure, Grant Lewis, a male employee of the VA, "walked into the room without knocking[,] pulled the curtains back and then proceeded to have a conversation with the female technician." *Id.* ¶¶ 13, 14. According to plaintiff, "Lewis was hired by the VA to perform technician duties in the Cardiology clinic at the VA Medical Center." ECF 10 at 6. The Government also notes that Lewis performed electrocardiograms. ECF 13 at 1–2.

After Lewis entered the examination room, he "proceeded to press his private parts inappropriately over Neal's head on the examination bed." ECF 1, ¶ 15. Neal said to Lewis, "Excuse me, don't you see that my *titties* are all out and why are you in here?" *Id.* ¶ 16 (emphasis

---

[1] The factual summary is drawn primarily from the Complaint, as well as certain exhibits submitted by the parties. In view of the procedural posture of the case, I must accept as true the facts alleged in the Complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). Moreover, as discussed, *infra*, I may consider the particular exhibits without converting the Motion to one for summary judgment.

in original). Lewis told plaintiff that he thought she was a man and continued to converse with the female technician. *Id.* ¶¶ 16. Neal asked Lewis, "Do I look like a man to you?" *Id.* ¶ 17. Lewis replied, "Yes, you do." *Id.* Neal told Lewis to leave, but he refused. *Id.* But, after "additional requests to leave," Lewis "finally left the room." *Id.* ¶ 18. Thereafter, the female technician told Neal that Lewis "does this all the time, I think he has adult ADHD." *Id.* ¶ 19.

On the date of the incident, August 7, 2017, Neal, along with her husband, reported the matter to the VA Patient Advocate. *Id.* ¶ 24. In turn, the VA Patient Advocate referred the matter to the VA Police. *Id.* ¶ 25. The same day, Walter Jenkins, a Veterans Affairs Police Detective, was "assigned to investigate the sexual harassment/Patient Privacy violation by Grant Lewis." *Id.* Detective Jenkins produced an investigative report, which the Government submitted with the Motion. ECF 9-1 at 5–12 (the "Investigative Report").

Lewis was "placed on desk duty" during the investigation. ECF 1, ¶ 25. While on desk duty, Lewis was instructed "to contact veterans for their medical appointments." ECF 9-1 at 9. To enable Lewis to do so, he was given "access to their personal information to contact them and discuss the veteran's medical options for treatment." *Id.* Lewis told Jenkins that Neal was on the list of patients he was given to contact. *Id.* According to plaintiff, while the investigation was ongoing, Lewis "accessed Plaintiff's health records, retrieved her personal phone number and repeatedly called Plaintiff's home telephone." ECF 1, ¶ 26. This conduct violated the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), according to plaintiff. *Id.*

Further, plaintiff alleges that, prior to the incident, "Lewis had been reported to the VA Medical Center Administration on various complaints for sexually harassing female patients during electrocardiograms." *Id.* ¶ 22. Neal claims that she has suffered "physical damages

including anxiety, sleeplessness, trauma and exacerbation of existing medical condition and will continue to suffer irreparable injury." *Id.* ¶ 28.

Neal submitted a claim to the U.S. Department of Veterans Affairs, via letter, on April 23, 2018. *Id.* ¶ 4. Receipt of the letter was acknowledged on May 22, 2018. *Id.* The "Office of General Counsel for the U.S. Department of Veterans Affairs denied Plaintiff Neal's claim by letter dated December 18, 2018." *Id.* ¶ 5.

Additional facts are included, *infra*.

## II.    Legal Standard

### A. Rule 12(b)(1)

A challenge to a federal court's subject matter jurisdiction is reviewed pursuant to Fed. R. Civ. P. 12(b)(1). A motion under Rule 12(b)(1) raises the issue of "whether the court has the competence or authority to hear and decide the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005); *see generally Ford Bend Co. v. Davis*, ___ U.S. ___, 139 S. Ct. 1843, 1848 (2019) (explaining the term "jurisdiction"). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. On the other hand, in a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id.* In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009); *Evans*, 166 F.3d at 647.

Here, the United States makes a facial challenge to subject matter jurisdiction.

The defense of sovereign immunity is a jurisdictional bar. Notably, "'sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.'" *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)).

## B. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading

requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote

and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for

summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, __ U.S. __, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one

"that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In resolving a Rule 12(b)(6) motion, a court "may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see* Fed. R. Evid. 201(b) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc*., 6367 F.3d 462, 466 (4th Cir.), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt County Mem'l Hosp*., 572 F.3d 176, 180 (4th Cir. 2009). However, a court may do so only if the facts are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." For example, "[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web." *O'Toole v. Northrop Grumman Corp*., 499 F.3d 1218, 1225 (10th Cir. 2007); *cf. Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*, 510 F. App'x 223, 227 (4th Cir. 2013) (noting that the court may take judicial notice of information on a website, "so long as the web site's authenticity is not in dispute"). However, "these facts [must be] construed in the light most favorable" to the nonmovant. *Clatterbuck*, 708 F.3d at 557.

As indicated, the Motion is supported by several exhibits: Neal's administrative complaint to the VA, along with her attorney's cover letter (ECF 9-1); the VA's denial letter (ECF 9-2); and the VA Maryland Health Care System ("VAMHCS") code of conduct policies (ECF 9-3). The Government submitted with its Reply a letter to Lewis dated January 25, 2012, detailing the protocol he was to follow when a female veteran required an ECG (ECF 13-1); and a letter of reprimand to Lewis dated February 3, 2016, for "Failure to Follow Instructions." ECF 13-2. The administrative complaint and its denial have given rise to the present suit. These documents are integral to the suit, and therefore I may consider them without converting the Motion to one for summary judgment.

The code of conduct policies and the disciplinary history, however, are not integral to the suit. And, I cannot take judicial notice of the code of conduct policies or Lewis's disciplinary history. Neither the code of conduct policies nor Lewis's disciplinary history appear to be publicly available.

### III.    Discussion

### A.  The FTCA

"Absent a statutory waiver, sovereign immunity shields the United States from a civil tort suit." *Kerns*, 585 F.3d at 193-94 (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). But, to the extent that the United States has expressly waived sovereign immunity, a plaintiff may recover against the United States. *See*, *e.g.*, *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005) (citation omitted); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990) (holding that a waiver of sovereign immunity "cannot be implied but must be unequivocally expressed") (citation and internal quotation marks omitted).

Under the Federal Tort Claims Act, Congress has waived the sovereign immunity of the United States, exposing it to tort liability for claims "for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment," so long as certain conditions are satisfied. 28 U.S.C. § 1346(b)(1); *see Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217-18 (2008). Nevertheless, the United States may be liable under the FTCA only to the extent that a "private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1), and only "in the same manner and to the same extent as a private individual under like circumstances." *Id.* § 2674. Thus, "the substantive law of each state establishes the cause of action." *Anderson v. United States*, 669 F.3d 161, 164 (4th Cir. 2012).

However, the United States is not liable for *all* torts committed by federal employees. Section 1346(b) of Title 28 "grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity." *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994). For a claim to fall within that "certain category," it must be, *id.* (quoting 28 U.S.C. § 1346(b)(1)) (alterations in original):

> [1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Because these elements are prerequisites for consideration under the FTCA, each one of them must be considered jurisdictional. *See Kerns*, 585 F.3d at 194 (stating that "if [the federal employee] was acting outside the scope of her employment with the Government, the district court

lacks jurisdiction").  Similarly, the exceptions to the Government's waiver of sovereign immunity, enumerated in 28 U.S.C. § 2680, are also jurisdictional.  *Welch*, 409 F.3d at 651.

State law, not federal law, serves as the source of substantive liability.  *See United States v. St. Louis Univ.*, 336 F.3d 294, 300 (4th Cir. 2003) (citation omitted).  Notably, "[t]he Supreme Court has concluded that the 'law of the place' refers to the 'whole law,' including choice-of-law principles of the state where the negligent act or omission occurred."  *Id.* (citing *Richards v. United States*, 369 U.S. 1, 11 (1962)).

As the parties recognize, Maryland follows the rule of *lex loci delicti* for tort actions.  This means that the court must apply the substantive law of the state where the wrong occurred.  *Proctor v. Washington Metropolitan Area Transit Authority*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 620, 925 A.2d 636, 648-49 (2007).  Because the conduct of Lewis took place entirely in Maryland, I shall apply Maryland law.

### B.  Scope of Employment

The Government argues that Lewis's actions fell outside the scope of his employment. ECF 9 at 8.  Therefore, it contends that the waiver of sovereign immunity conferred by the FTCA does not apply.  Lewis's conduct underlies both Counts 1 and 2 of the Complaint.  Because the Government argues that this Court lacks jurisdiction over the entire Complaint based on the matter of scope of employment, I will first address this issue.

Plaintiff alleges that Lewis improperly entered her examination room; sexually assaulted her; unlawfully accessed her medical records; and improperly called her at her home.  In Maryland, "[l]itigants may invoke the doctrine of respondeat superior as a means of holding an employer, corporate or otherwise, vicariously liable for the tortious conduct of an employee, where it has been shown that the employee was acting within the scope of the employment relationship at that

time." *S. Mgmt. Corp. v. Taha*, 378 Md. 461, 480-81, 836 A.2d 627, 638 (2003); *see Barclay v. Briscoe*, 427 Md. 270, 282, 47 A.3d 560, 567 (2012); *Embrey v. Holly*, 293 Md. 128, 134, 442 A.2d 966, 969 (1982). The doctrine embodies the principle that, "[b]ecause 'the master holds out his servant as competent and fit to be trusted, . . . he in effect warrants his servant's fidelity and good conduct in all matters within the scope of his employment.'" *Oaks v. Connors*, 339 Md. 24, 30, 660 A.2d 423, 426 (1995) (quoting *Globe Indem. Co. v. Victill Corp.*, 208 Md. 573, 580, 119 A.2d 423, 427 (1956)).

"Ordinarily, the issue of whether a particular act is within the scope of employment is properly decided by a jury . . . ." *Barclay*, 427 Md. at 283, 47 A.3d at 568. It is only where there is "'no conflict in the evidence relating to the question and but one inference can be drawn therefrom'" that the issue becomes a "'question . . . of law for the court.'" *Id.* (citation omitted). Moreover, "there are few, if any, absolutes" in assessing whether an employee's act is within the scope of employment. *Sawyer v. Humphries*, 322 Md. 247, 255, 587 A.2d 467, 471 (1991).

The general rule is that, "[f]or an employee's tortious acts to be considered within the scope of employment, the acts must have been in furtherance of the employer's business and authorized by the employer." *Taha*, 378 Md. at 481, 836 A.2d at 638. However, this general benchmark is not susceptible of mechanical application. "By 'authorized' [it] is not meant authority expressly conferred [by the employer], but whether the act was such as was incident to the performance of the duties entrusted to the employee by the employer, *even* [*if*] *in opposition to his express and positive orders*." *Sawyer*, 322 Md. at 255, 587 A.2d at 470 (emphasis added) (citations and some internal quotation marks omitted). "Accordingly, 'an act may be within the scope of employment, even though forbidden or done in a forbidden manner, or consciously criminal or tortious . . . .'"

*Tall v. Bd. of Sch. Comm'rs of Baltimore City*, 120 Md. App. 236, 252, 706 A.2d 659, 667 (1998) (quoting *Great Atl. & Pac. Tea Co. v. Noppenberger*, 171 Md. 378, 391, 189 A. 434 (1937)).

"Another factor is whether the 'employee's conduct was 'expectable' or 'foreseeable'.'" *Sage Title Grp., LLC v. Roman*, 455 Md. 188, 213, 166 A.3d 1026, 1040 (2017) (quoting *Sawyer*, 322 Md. at 256, 587 A.2d at 470), *reconsideration denied* (Sept. 21, 2017). In *Sage Title*, the Maryland Court of Appeals found sufficient evidence for a trier of fact to conclude that an employee's illegal acts were committed within the scope of his employment. *Id.* at 213-15, 166 A.3d at 1040-41. The court based its conclusion on three findings: (1) the employee was authorized to perform activities very similar to the tortious ones in question (*id.* at 213-14, 166 A.3d at 1040-41); (2) there was "no question that [the employee] was acting 'in furtherance of the employer's business and authorized by the employer'" (*id.* at 214, 166 A.3d at 1041); and (3) the tortious acts were foreseeable to his employer because the employer had knowledge that the employee had previously violated a related company policy. *Id.* at 214-15, 166 A.3d at 1041.[2]

Nevertheless, "where an employee's actions are personal, or where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests," the actions will ordinarily be considered outside the scope of employment, even if they occur "during normal duty hours and at an authorized locality." *Sawyer*, 322 Md. at 256-57, 587 A.2d at 471. And, "'[w]here the conduct of the servant is unprovoked, highly unusual, and quite outrageous,' courts tend to hold 'that this in itself is sufficient to indicate that the motive was a purely personal one' and the conduct outside the scope of employment." *Id.*

---

[2] Although foreseeability is "an important factor," *Sawyer*, 322 Md. at 256, 587 A.2d at 471, I am unaware of any reported Maryland case in which an employer has been held vicariously liable based solely on the foreseeability of the employee's conduct.

at 257, 587 A.2d at 471 (quoting *Prosser and Keeton on the Law of Torts* § 70, at 506 (5th ed.1984)).

In essence, the Complaint alleges three groups of actions on the part of Lewis: (1) that he entered her examination room without knocking while she was partially disrobed and refused to leave (ECF 1, ¶¶ 13, 14); (2) that once in the examination room he "proceeded to press his private parts inappropriately over Neal's head on the examination bed" (*id.* ¶ 15); and (3) that he "accessed [her] health records, retrieved her personal phone number, and repeatedly called [her] home telephone." *Id.* ¶ 26.

The Government contends that "the complained-of actions fall outside the scope of employment and thus sovereign immunity is not waived under the [FTCA]." ECF 9 at 1. It argues that Lewis's alleged "sexual misconduct. . . categorically falls outside the scope of his employment." *Id.* at 9. Moreover, it maintains that Lewis's conduct was "personal" (*id.* at 10) and in "direct conflict with the VA's written policy." *Id.* Further, the Government claims that the "VA has a 'zero-tolerance' policy of 'physical, psychological, verbal, sexual, emotional, or financial' abuse of patients, including 'insulting remarks toward or about a Veteran.'" *Id.* Therefore, the Government contends that this Court lacks subject matter jurisdiction. *Id.*

In Opposition, Neal argues that Lewis's conduct was within the scope of his employment for a variety of reasons. Although the VA's written code of conduct barred Lewis's sexual misconduct, Neal contends that the scope of the inquiry under *Sawyer*, 322 Md. 247, 587 A.3d 467, is broader than formal authorization by the employer. ECF 10 at 6. She posits that "Lewis was performing his job function as a licensed technician in the Cardiology clinic when he entered the ultrasound room and proceeded to have a work related conversation with the female technician during Neal's procedure and subsequently Sexually [sic] harassed Neal." *Id.* Therefore, Neal

maintains that her claims are "actionable even though they were done in opposition to any express or positive orders like the written policy being asserted by the Government." *Id.* at 8. She also contends that Lewis's conduct was foreseeable to the VA because it "had notice of Lewis sexually harassing female patients." *Id.* at 5. In addition, plaintiff alleges that "Lewis' action of making harassing phone calls to Neal at her home repeatedly was done after he had been placed on desk duty where he had open access to Neal's private phone such that it was incidental to his performance of his desk duty functions." *Id.* at 6.

"Judges in this district . . . have repeatedly held that, under Maryland law, an employer is not vicariously liable for torts arising from sexual harassment. . ." *Samuels v. Two Farms, Inc.*, DKC 10-2480, 2012 WL 261196, at *10 (D. Md. Jan. 27, 2012) (collecting cases). Clearly, Lewis's conduct in "press[ing] his private parts inappropriately over Neal's head on the examination bed" (ECF 1, ¶ 15) was outside the scope of his employment. It follows that, as to such conduct, the Government has not waived sovereign immunity.

However, the sexual assault is not the only unlawful conduct alleged by Neal. She also asserts that Lewis made an unauthorized entry into her examination room and accessed her medical records improperly in order to harass her. And, when Lewis entered Neal's examination room, he failed to knock, despite a sign on the door instructing him to do so, pulled back a privacy curtain, insulted Neal, and refused to leave, despite Neal's request. ECF 1, ¶¶ 13–18.

Courts assess whether "an employee's tortious acts were within the scope of his employment" by analyzing "whether they were in furtherance of the employer's business and were 'authorized' by the employer." *Khatami v. Compton*, 844 F. Supp. 2d 654, 659 (D. Md. 2012) (citing *Sawyer*, 322 Md. at 255, 587 A.2d at 470). Whether an employee's act "furthers his master's business" is evaluated "under the totality of the circumstances." *Id.* The factors that bear

on this evaluation include "(1) whether the employer should expect or foresee the conduct; (2) whether the conduct is similar to the conduct the employer authorizes; and (3) whether the conduct is close in time and space to the employee's job duties." *Id.*

As to the first factor, in the light most favorable to plaintiff, Lewis's conduct towards female patients was foreseeable to the government. According to plaintiff, Lewis had previously "been reported to the VA Medical Center Administration on various complaints" for making female patients uncomfortable. ECF 1, ¶ 22. And, the Government acknowledges that Lewis was disciplined "for failure to follow [the] restrictions" given to him concerning performing electrocardiograms. ECF 13 at 4. Further, the Investigative Report contains a note that Lewis "admitted that between the months of October and December 2015, he has had several complaints by female patients that he made them feel very uncomfortable during and after their procedures." ECF 9-1 at 8. Therefore, at this juncture, this factor cuts in favor of a finding that Lewis was acting within the scope of his employment.

As to the second factor, the parties agree that Lewis was employed by the VA at least in part to conduct electrocardiograms. Plaintiff characterizes him as a "technician." ECF 10 at 6. And, the Government acknowledges that Lewis performed electrocardiograms as part of his job. ECF 13 at 1–2. Entering examination rooms and conversing with other technicians would seem, then, to be similar to the conduct authorized by Lewis's employer.

Finally, as to the third factor, plaintiff has alleged that the incident with Lewis entering her examination room took place in Lewis's place of employment. ECF 1, ¶ 10. There is no suggestion that this incident took place after-hours or off-site. This factor, too, weighs in favor of finding Lewis acted within the scope of his employment.

Further, actions by employees can fall within the scope of employment "even if in opposition to [the employer's] express and positive orders." *Sawyer*, 322 Md. At 255, 587 A.2d at 470. According to the government, "express and positive orders" were given to Lewis by the VA, which included a prohibition on "performing EKG or sonograms on female patients." ECF 13 at 2. Although Lewis was not performing the EKG on Neal, the Complaint alleges that Lewis entered the room and conversed "with the female technician." ECF 1, ¶ 13. According to Neal, he was "at least partially" motivated "by a purpose to serve [his] employer." *Id.* ¶ 27.

With respect to the telephone calls Lewis allegedly made to Neal's home, the Investigative Report indicates that Lewis was "reassigned to administrative duties in the Medical Services Department due to the current investigation." *Id.* at 9. Lewis "stated that his access to patient records was granted due to his temporary position/duties in the Medical Services Department. The duties required [Lewis] to contact veterans for their medical appointments." *Id.* Lewis told the investigating officer that "Neal was one of the patients on his list to contact for appointment scheduling." *Id.* Therefore, Lewis's conduct in contacting Neal was also arguably within the scope of his employment.

As noted, the matter of scope of employment is generally a question for a jury. *Barclay*, 427 Md. at 283, 47 A.3d at 568. It becomes a question of law only if there is "no conflict in the evidence relating to the question and but one inference can be drawn therefrom." *Id.* (citation omitted). In my view, plaintiff has alleged facts sufficient at this stage of the litigation to support her claim that Lewis was acting within the scope of his employment when he entered her examination room, accessed her phone number, and called her at home. Therefore, although the sexual assault claim fails, I decline to dismiss the remainder of the claims based on scope of employment.

### C.  Count 1

As indicated, the Government has moved to dismiss Count 1 under Rule 12(b)(1), and it has asserted that Count 2 fails under Rule 12(b)(6).  Except as to the so called HIPAA claim, however, the government has not asked this Court to assess whether plaintiff has stated a claim as to Count 1.  *See* ECF 9 at 1.

Count 1 is entitled "Professional Negligence – Vicarious Liability."  ECF 1 at 5.  The Government posits that "Count 1 alleges vicarious liability for professional negligence based on the VA's 'negligent supervision, hiring and training . . . [and] failure to discipline or to stop' Mr. Lewis."  *Id.* at 6.  However, allegations of negligent supervision, hiring, and training appear only in ¶ 37 of the Complaint. In ¶ 37 of ECF 1, plaintiff alleges: "Defendant is liable to Neal for negligent supervision, hiring and training in that it had prior notice of various complaints of sexual harassment made by female patients at the Baltimore VA against Lewis."  In ¶ 38, plaintiff alleges: "Defendant failed to discipline or stop Lewis from being able to sexually harass patients like Neal."

But, Count 1 is not limited to claims of negligent supervision, hiring, and training.  Indeed, plaintiff explains that Count 1 contains "not just negligent supervision, hiring, or retention" claims, but also "vicarious liability claims [that] are premised on various negligent acts by the Government."  ECF 10 at 16.  *See Bourne v. Mapother & Mapother, P.S.C.*, 998 F. Supp. 2d 495, 506 (S.D. W.Va. 2014) ("A negligence action based on the failure to supervise or train is one of primary liability. . . This is different than the vicarious liability imposed by the doctrine of respondeat superior.").  These claims do not involve Lewis's alleged sexual assault of Neal, over which this Court lacks jurisdiction. *See* ECF 1, ¶¶ 36, 40, 41, 43, 44, 45.

For example, in ¶ 36 of the Complaint, Neal asserts that "Lewis breached the standard of care of a professional technician in the cardiology clinic by using his professional position to violate Neal's space, body, confidentiality and privacy when she went to receive medical

treatment." *Id.* ¶ 36. She alleges in ¶ 41 that "Lewis further breached the standard of care by repeatedly making harassing phone calls to Neal's home despite being told by Neal to stop calling [her]." And, she asserts that "Lewis' breach of the confidentiality and privacy required by a HIPAA covered entity is grounds of negligence imputable vicariously on Defendant." *Id.* ¶ 43. According to plaintiff, Lewis himself was negligent (*see, e.g.*, *id.* ¶ 40); the Government "owed Plaintiff a duty to create a medically safe environment" (*id.* ¶ 33); and the Government was obligated to safeguard her medical records. *Id.* ¶ 45. Further, plaintiff lodges a claim that "Lewis' breach of the confidentiality and integrity in information showed a negligent breach of the implied contract between Neal and Defendant to keep her healthcare information private and confidential." *Id.* ¶ 44.

As noted, the FTCA's waiver of sovereign immunity is subject to a number of exceptions. *See* 28 U.S.C. § 2680. "The most important of these exceptions to the waiver of sovereign immunity is the discretionary function exception." *McMellon v. United States*, 387 F.3d 329, 335 (4th Cir. 2004). Section 2680(a) of Title 28 provides that the United States shall not be liable for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

The Government argues that this Court lacks jurisdiction with respect to Count 1 because Neal's claims fall under the discretionary function exception to the FTCA. ECF 9 at 10. "Congress enacted this exception 'to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort . . . [and] to protect the Government from liability that would seriously handicap efficient government operations.'" *Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006) (quoting

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984)) (alterations in *Suter*).

"To determine whether conduct qualifies for the discretionary function exception, courts apply a two-pronged test. First, a court considers whether the challenged governmental conduct involves an element of judgment or choice." *Rich v. United States*, 811 F.3d 140, 144 (4th Cir. 2015) (citing *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). Governmental conduct does *not* involve judgment or choice when "a statute, regulation, or policy prescribes a specific course of action." *Rich*, 811 F.3d at 144 (citation omitted); *see Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

"Second, if the challenged conduct does involve an element of judgment, the court must then determine whether the judgment was one that the exception was designed to protect, namely, a judgment based on considerations of public policy." *Rich*, 811 F.3d at 144 (citing *Gaubert*, 499 U.S. at 322-23). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324.

The Government maintains that plaintiff's "allegations of negligent hiring, training, and supervision meet both prongs of the *Gaubert* test and are barred under the discretionary function exemption." ECF 9 at 11. It notes that "[d]ecisions surrounding hiring, training, and supervision are laden with social and economic policy considerations, and the Fourth Circuit has long held that these functions fall squarely within the discretionary function exception." *Id.* In making this argument, the Government relies on *Suter v. United States*, 441 F.3d 306 (4th Cir. 2006), and *LeRose v. United States*, 285 F. App'x 93 (4th Cir. 2008). *Id.*

In *Suter*, 441 F.3d at 309, 312 n.6, the Fourth Circuit dismissed the plaintiffs' negligent hiring and supervision claims out of hand, even though the United States had allegedly allowed its employee to commit criminal acts against the plaintiffs. Moreover, both of the cases cited by the *Suter* Court in support of its conclusion appear to preclude FTCA actions for negligent hiring. *See Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) ("[D]efendants' allegedly negligent and reckless employment, supervision and training . . . . fall squarely within the discretionary function exception."); *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) ("[W]e hold that decisions concerning the hiring, training, and supervising of . . . employees are discretionary in nature, and thus immune from judicial review."). *LeRose* is similarly unequivocal. There, the Court said, 285 F. App'x at 97: "The [agency's] decisions regarding the hiring, supervision and retention of [an employee] are precisely the type of decisions that are protected under the discretionary function exception."

Plaintiff relies on this Court's decision in *Lins v. United States*, ELH-17-2163, 2018 WL 2183393 (D. Md. May 10, 2018), *appeal dismissed and case remanded by* 771 F. App'x 528 (4th Cir. 2019), *appeal docketed*, No. 19-2069 (CA4). Neal notes that in that case, the Court said that it was not "compelled to preclude the possibility of a successful negligent supervision and retention claim, were that claim to allege that the Government had notice of an illegal act by [its employee] and failed to respond." *Lins*, 2018 WL 2183393, at *16. However, this is not a case in which the Government allegedly failed to respond to the employee's misconduct. To the contrary, the Government disciplined Lewis in response to prior complaints. ECF 13 at 4.

Accordingly, I will not depart from longstanding Fourth Circuit precedent, which indicates that the FTCA's discretionary function exception bars plaintiff's claims for negligent hiring, retention, and supervision, as alleged in her Complaint. Therefore, that portion of Count I is

subject to dismissal, under Rule 12(b)(1).[3]  But, the Government has not sought dismissal of the remainder of Count 1 under Rule 12(b)(6).

## D.  Count 2

In Count 2, Neal pleads a claim for intrusion upon seclusion, pertaining to Lewis's entry into the examination room, his accessing of plaintiff's medical records, and his calling her at her home.  I will evaluate this claim under Fed. R. Civ. P. 12(b)(6).

"Intrusion upon seclusion is one of the torts under invasion of privacy." *Demo v. Kirksey*, PX-18-cv-00716. 2018 WL 5994995, at *3 (D. Md. Nov. 15, 2018) (citing *Pemberton v. Bethlehem Steel Corp.*, 66 Md. App. 133, 161, 502 A.2d 1101, 1115 (1986)).  Intrusion upon seclusion occurs where there is an "intentional intrusion upon the solitude or seclusion of another or her private affairs or concerns that would be highly offensive to a reasonable person." *Furman v. Sheppard*, 130 Md. App. 67, 73, 744 A.2d 583, 585 (2000) (citing Restatement (Second) of Torts § 652B (Am. Law. Inst. 1977)); *see Gamble v. Fradkin & Weber, P.A.*, 845 F. Supp. 2d 377, 383 (D. Md. 2012).  "A trespass 'becomes relevant only when it invades a defendant's reasonable expectation of privacy.'" *Furman*, 130 Md. App. at 74, 744 A.2d at 586 (citation omitted).

In *Dorris v. Accounts Receivable Management, Inc.*, GLR-11-3453, 2013 WL 1209629, at *9 (D. Md. Mar. 22, 2013), the court explained that the "Maryland Court [of Appeals] established two factors to be considered in determining whether the evidence is sufficient to establish a jury question for invasion of privacy: (1) whether the frequency of the communication indicates a

---

[3] The Government also asserts: "Because Plaintiff's negligent hiring, training, and supervision claim is absent from Plaintiff's administrative complaint filed with the VA, Plaintiff has failed to exhaust the administrative remedies available to her as to that claim."  ECF 9 at 12–13.  As a result of this failure, the Government contends, plaintiff is "jurisdictionally barred" from asserting the claim.  *Id.* at 12.  Because Neal's claims under Count 1 for negligent hiring, training, and supervision fail under the discretionary function exception, I need not address whether these claims were exhausted.

pattern of harassment, or, if the communication is 'not of such frequency as to constitute harassment,' (2) whether the communication possesses a 'vicious quality.'" (quoting *Household Fin. Corp. v. Bridge*, 252 Md. 531, 541, 250 A.2d 878, 884 (1969)).

As to Lewis's entrance into Neal's examination room and his subsequent interaction with her, I am not aware of any Maryland case addressing privacy expectations in this context. Nor have the parties provided any helpful authority.

The Government cites *Sanchez-Scott v. Alza Pharm.*, 86 Cal. App. 4th 365, 103 Cal. Rptr. 2d 410 (2001), indicating a diminished expectation of privacy as to medical personnel in a hospital setting. In *Sanchez-Scott*, the court found that a breast cancer patient who was partially disrobed in an examination room "does not, and should not, take a risk that what goes on in the examination room will be seen or heard by *anyone other than medical personnel*." *Sanchez-Scott*, 86 Cal. App. 4th at 376, 103 Cal. Rptr. at 218 (emphasis added). The court specifically noted that in a hospital setting, "[t]he patient knows and expects that nurses, doctors, food handlers, and others enter or leave 'his' [or her] hospital room in accordance with the medical needs of the patient and the hospital routine. . . Thus for certain purposes, a hospital room is fully under the control of the medical staff. . ." *Id.* (quoting *People v. Brown*, 88 Cal. App. 283, 290–91, 151 Cal. Rprt. 749, 754 (1979)) (alterations in original).

A Connecticut court has suggested that a patient's expectation of privacy in a treatment room does not extend to medical personnel. *See Birge v. Medical Electronic Distributors, Inc.*, No. 075000540, 2009 WL 1959393, at *6 (Conn. Super. June 5, 2009) ("[T]he plaintiff had a reasonable expectation that no one *other than medical personnel* would be present in her treatment room. . .") (emphasis added). And, in a case from 1881, *De May v. Roberts*, 46 Mich. 160, 9 N.W. 146 (1881), cited by defendant (ECF 9 at 14), the patient was led to believe that the person she

was admitting to her home with her doctor was an assistant physician. *Id.* at 161, 146. This lay person, admitted into the home under false pretenses, witnessed the patient giving birth, constituting a violation of her privacy. *Id.* at 166, 149.

However, these cases are not factually analogous. In *Sanchez*, a drug salesperson violated a patient's privacy when he observed a breast examination without disclosure of his status as a drug salesperson. *Sanchez-Scott*, 86 Cal. App. 4th at 376, 103 Cal. Rptr. at 218. Similarly, in *Birge* and *De May*, the courts considered privacy violations based on the conduct of non-medical professionals.

Neal has alleged actions by a member of the medical staff who was not involved in her care. She claims not only that Lewis entered the room, but also that he ignored the privacy sign and the drawn privacy curtain. ECF 1, ¶ 13. Further, she claims Lewis refused to leave the room, conversed with the female technician, and insulted Neal. *Id.* ¶¶ 16–18.

Plaintiff sought to maintain her privacy. *See Barnhart v. Paisano Publications, LLC*, 457 F. Supp. 2d 590, 593 (D. Md. 2006); *see also* Restatement (Second) of Torts, § 652B, comment c ("Even in a public place . .. there may be some matters about the plaintiff, such as his underwear or lack of it, that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters."); *cf. Solomon v. National Enquirer, Inc.*, DKC-95-3327, 1996 WL 635384, at *3 (D. Md. June 21, 1996) (finding no intrusion upon seclusion in someone's home when "[p]laintiff was observed when standing at her window. She was photographed while standing at her window with the curtains open. There has been no allegation that she took steps to conceal herself from uninvited eyes."). At this juncture, I conclude that plaintiff has stated a claim for intrusion upon seclusion.

As to Lewis's phone calls to Neal's home, dismissal at this stage of the litigation would also be premature. The Restatement (Second) of Torts § 652B(d) states:

> There is. . . no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object. Thus there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.

In the Complaint, plaintiff alleges that Lewis called her home telephone number "repeatedly." ECF 1, ¶ 26. Further, the Investigative Report reveals that the VA put Lewis in the position of contacting her. ECF 9-1 at 9. In the light most favorable to plaintiff, she has stated a claim for invasion of privacy.

### E. HIPAA

The Government argues that Neal "attempts to create a private cause of action from a violation of the Health Insurance Portability and Accountability Act," 42 U.S.C. § 300gg, 29 U.S.C. § 1181 *et seq.* and 42 U.S.C. § 1320 *et seq.* ECF 9 at 15. However, because there is no private right of action under HIPAA, the Government contends that plaintiff's claims under HIPPA must fail. *Id.*

There is no private right of action under HIPAA. *Atkinson-Bush v. Balt. Wash. Med. Ctr., Inc.*, No. L-10-2350, 2011 WL 2216669, at *3 (D. Md. May 25, 2011), *aff'd*, 585 Fed. App'x. 161 (4th Cir. 2014); *see also Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) ("HIPAA does not create a private right of action."); *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006). However, plaintiff does not assert a claim under HIPAA.

Rather, plaintiff has alleged that HIPAA creates the statutory duty to protect her privacy, and the Government is therefore vicariously liable for Lewis's conduct. *See, e.g.*, ECF 1, ¶ 43

("Lewis' breach of the confidentiality and privacy required by a HIPAA covered entity is grounds of negligence imputable vicariously on Defendant."). Neal notes in her Opposition that her lawsuit rests in part on the theory that the VA breached its "statutory duty to protect her privacy and health information pursuant to HIPPA." ECF 10 at 21–22.

Therefore, I need not address the Government's arguments that claims under HIPPA fail under Rule 12(b)(6), as plaintiff has made no such claims.

### IV.    Conclusion

For the aforementioned reasons, I shall grant defendant's Motion in part and deny it in part. An Order follows.


Date: November 27, 2019                                    _____/s/_____
                                                          Ellen L. Hollander
                                                          United States District Judge